UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:22-cr-<u>414-MO</u> |
| v. | INFORMATION |
| JEFFREY MEINING, | 18 U.S.C. § 1343 |
| Defendant. | |

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTORY ALLEGATIONS

At all relevant times:

    1.    Bulletproof It, LLC, was a Washington Limited Liability Company owned and operated by **JEFFREY MEINING.**

### COUNT 1
### (Wire Fraud)
### (18 U.S.C. § 1343)

    2.    Paragraph 1 of the Introductory Allegations are incorporated here.

    3.    From 2016 to 2022, in the District of Oregon and elsewhere, defendant **JEFFREY MEINING** did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

**Information**      **Page 1**

## SCHEME AND ARTIFICE TO DEFRAUD

4. As part of the scheme and artifice to defraud, defendant engaged in the following activity to carry out the scheme and artifice to defraud.

5. **MEINING**, through his company Bulletproof It, LLC, advertised and sold body armor, primarily to various governmental agencies, including federal, state, and local law enforcement and fire departments. **MEINING** also sold body armor by supplying through another company who sold products under programs run by the General Services Administration.

6. **MEINING** advertised on his website that his products were "Made in USA." **MEINING** also advertised on product specification sheets that his products were "US Made / TAA Compliant." In reality, **MEINING** knew many of his products that were claimed to be made in the United States were not. **MEINING** received over 600 imports totaling over a million dollars from Chinese companies.

7. **MEINING** made claims that products met certain protection levels and were tested to meet standards. In reality, **MEINING** knew he did not test his products to meet the advertised and contractually promised levels.

8. **MEINING** knowingly provided altered test reports where he removed or altered material information.

9. As one example for a local police department, on or about August 14, 2019, **MEINING's** company signed a contract with the Mesa Police Department in Arizona for the purchase of 840 helmets for approximately $247,800.00. **MEINING** and his company agreed to provide helmets that "meet NIJ Level IIIA or better" and include ballistic protection for .44 Magnum, .357 SIG, and 9mm. **MEINING** knew at the time that the helmets he would and did provide had not been tested to meet those standards. On or about December 22, 2021,

**MEINING** caused the transmission via interstate wire from the District of Oregon to Arizona a falsified test result for the helmets. Specifically, **MEINING** removed material information from that test result by removing a test result showing that the helmet failed when tested against a .44 Magnum. Later testing in December 2021 through a certified Ballistic Laboratory report showed that the helmets sold to Mesa PD failed testing for .44 Magnum and .357 SIG.

10. **MEINING** also made false statements to ensure he continued to receive product from China. On or about June 28, 2021, Customs and Border Protection in Portland, Oregon, detained a shipment from China to **MEINING** containing helmets and ceramic plates (body armor). On or about July 9, 2021, in furtherance of the above-described scheme to defraud, **MEINING** caused a customs broker to submit via interstate wire a materially false test result in an effort to release the items and be able to sell them. Specifically, the real and unaltered test result showed the product failed the limited testing **MEINING** submitted. However, **MEINING** materially altered the test result to remove the "Fail" language.

11. As one example involving a purchase by the federal government, on or about September 15, 2021, **MEINING** signed and caused to be sent by interstate wire a contract with the United States Air Force in the amount of approximately $32,680.00. **MEINING** agreed to provide helmets and equipment that were made in the United States. **MEINING** also agreed to provide helmets that met NIJ IIIA and be able to stop .44 Magnum. **MEINING** knew at the time he signed the contract that the helmets he agreed to provide were not made in the United States and were not NIJ tested to stop .44 Magnum.

12. On about September 8, 2016, **MEINING**, through his company, became a supplier of goods under U.S. Tactical Supply's GSA contract GS-07F-0259N. The contract allows federal, state, and local government agencies to place orders for products offered under

the contract. The contract requires all goods be made in compliance with the Trade Agreement Act (TAA), 19 U.S.C. § 2501 et seq. The TAA mandates that the government may only purchase products that are grown, produced, manufactured, or "substantially transformed" in the United States or a "designated country." Designated countries are determined by trade agreements maintained by the United States Trade Representative. China is not a TAA designated country.

13. **MEINING** was aware of the TAA compliance requirement in U.S. Tactical Supply's GSA contract. Between September 2016, and continuing through January 2022, **MEINING** provided U.S. Tactical Supply body armor products while falsely claiming that they met specified testing standards and/or falsely claimed were made in the United States. As a specific example, on or about August 31, 2020, in response to a request for a quote from U.S. Tactical Supply, for 24 High Cut model ballistic helmets, **MEINING** caused the transmission via interstate wire from the District of Oregon to Idaho a materially false statement by both including a falsified test result for the helmets and stating that the helmets were US Made/TAA Compliant. Regarding the test result, **MEINING** removed material information from that test result by removing a test result showing that the helmet failed when tested against a .44 Magnum.

14. In total, as part of the scheme, **MEINING** made sales totaling at least $2,716,212.18 with at least $1,478,579.72 being substituted product that **MEINING** falsely claimed met specified testing standards and/or falsely claimed was made in the United States.

## WIRE COMMUNICATION

15. On or about August 31, 2020, in the District of Oregon, **MEINING**, having devised and intended to devise the material scheme to defraud described herein, and for the purpose of executing or attempting to execute the above-described material scheme to defraud

and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce certain sounds, signals, and writings, either sent from or received within the District of Oregon, to wit, the email described in Paragraph 13 that included the materially false statements of the country of origin of helmets and the altered test results

In violation of 18 U.S.C. § 1343.

Dated: November 22, 2022

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ Quinn P. Harrington*
QUINN P. HARRINGTON, OSB #083544
Assistant United States Attorney